293 So.2d 815 (1974)
J.D. KITCHENS
v.
STATE of Mississippi.
No. 47869.
Supreme Court of Mississippi.
April 22, 1974.
Rehearing Denied May 20, 1974.
Carl D. Ford, Buckley & Ford, Laurel, for appellant.
A.F. Summer, Atty. Gen., by Pete J. Cajoleas, Special Asst. Atty. Gen., Jackson, for appellee.
SMITH, Justice:
J.D. Kitchens was charged in the Circuit Court of Jones County with constructive contempt of that court. Following trial, he was adjudged guilty of that offense and sentenced to serve a term of six months in the county jail. He appeals from that judgment and sentence.
A number of matters are assigned as having constituted reversible error.
First, it is argued that the jurisdiction of the trial court to try the case was not established. This contention is without merit. In Prine v. State, 143 Miss. 231, 242, 108 So. 716, 719 (1926), it was stated:
No other court [except the court against which the contempt was committed] has any authority to punish such a contempt. Statutes regulating the venue of trials of criminal offenses generally are inapplicable to contempt proceedings.
At page 126, 17 C.J.S. Contempt § 51 (1963), the rule is given as follows:
It is a well established rule that the power to judge a contempt rests exclusively with the court contemned, and that no court is authorized to punish a contempt against another court.
*816 To the same effect, see also 17 C.J.S. Contempt § 64, page 167 (1963).
We have examined and considered the other alleged errors assigned and have concluded from the record that appellant was fairly tried and that the evidence was sufficient to support the trial judge's findings.
The contention that appellant was entitled to trial by jury was dealt with and rejected by this Court in Hinton v. State, 222 So.2d 690 (Miss. 1969).
The trial judge's opinion, delivered following the trial, is unusually comprehensive and well reasoned and we adopt the following portion of it as the opinion of this Court.
The defendant, J.D. Kitchens, is the father of Jimmy D. Kitchens, the latter having been indicted for murder by the grand jury of the Second Judicial District of Jones County, Mississippi, during the regular March 1973 Term of Court. The case of the State of Mississippi vs. Jimmy D. Kitchens, No. 4459, was scheduled for trial on Monday, April 16th, 1973, and prior to that date on motion of the defense counsel a special venire had been drawn to appear on Monday morning, April 16th, 1973. The venire, as I recall, contained names of 48 prospective jurors, among whom was one R.C. Nowell.
On Saturday, April 14th, 1973, somewhere in the neighborhood of twelve-thirty, the defendant, J.D. Kitchens, approached the prospective juror, R.C. Nowell, at his home, and the Court after hearing the testimony of both Mr. Nowell, who was the State's only witness, and the two witnesses for the defendant, J.D. Kitchens, who testified in his own behalf, and his wife, Mrs. J.D. Kitchens, the Court can find no other basis for a visit other than for the purpose of influencing a juror in this case. The testimony is somewhat hazy concerning whether or not the defendant knew at the time he visited the prospective juror whether he knew Nowell was at that time, or had at that time, already been summoned. The Court finds that he did know.
There is nothing revealed in the conversation that took place at their home to make the Court believe that it was for any other purpose than for one old friend to play on the human frailty of a friendship that had found its beginning in early childhood. I think it is of significance in this case that the defendant used that visit for the purpose of reminding this prospective juror of favors he had bestowed upon the juror's father years ago. The only real substance of that conversation was the fact that this defendant's son was in jail and that his trial was imminent.
R.C. Nowell is a person personally known to this Court, and he is a person in my opinion who is trustworthy and honest, although in this case it is apparent that he has been reluctant to implicate an old friend. The effect of that visit is vividly seen in what transpired immediately following the termination of that visit. This prospective juror being prodded by his conscience called the District Attorney and related to him that he had been approached and requested the District Attorney to excuse hem [sic] from the case. When this was developed on the voir dire examination on Monday morning, April 16th, 1973, the special venire, on motion of both the State and defense counsel, was quashed and the Kitchens trial was continued for the term, and on the Court's own order this information presently pending before the Court was filed by the District and County Attorneys.
From the evidence the Court finds that the defendant, J.D. Kitchens, and the venireman, R.C. Nowell, reside about twenty miles apart, both being residents of Jones County, that years ago they were good friends and often attended the same church together, the venireman's father having been the pastor of the church where they attended. That during the period of time when they attended church together they were good friends and as is already indicated *817 the defendant Kitchens befriended the pastor on at least one occasion, and these elements of friendship were rehashed again for what the Court thinks was a very apparent purpose on April 14th, 1973, when the defendant Kitchens contacted this prospective juror. It is also of significance that these parties had not visited together, and this is undisputed, ever in the home of the venireman, R.C. Nowell, until two days prior to the scheduled trial.
The fact that R.C. Nowell, who is in the Court's estimation, an honorable and trustworthy citizen of this County, felt constrained to report to the District Attorney that he had been contacted and to request that he be excused from the jury panel bespeaks loudly and clearly the embarrassing position in which this juror found himself. The purpose of the visit created subtle persuasion brought about by the defendant. The result of it is that the trial of one who is charge [sic] with one of the most serious crimes known in this nation has been delayed. The acts of the defendant were designed and calculated to obstruct, defeat, and impede justice and the administration thereof.
It doesn't matter that the defendant was tactful and subtle or that he skillfully and diplomatically engaged in euphemistic camouflage of purpose in making the visit, or in reminding this prospective juror of the past acts of friendship existing between himself and the venireman, and himself and the venireman's father.
The Court is not called upon in this case to refine the purpose of this visit to the point of being able to say beyond any doubt that it was for the purpose of creating a condition that would result in the State being required to exercise one of its peremptory challenges, or whether it was for some other equally illegal or unlawful purpose. The fact remains that it did in fact result in the delay of a trial and in the delay of justice.
Contemptuous acts for which one may be found guilty of obstructing the administration of justice are not limited to bribery of a juror or such other blatant indiscretions. Any act or conduct which tends to bring the authority of the Court and the administration of law into disrepute or which impedes the due administration of justice is subject to being punished as a contempt of court. Here, the act of the defendant of which complaint is nade, [sic] unquestionably was calulated [sic] and intended to play on human frailty and proof that defendant's shots hit their mark is found in the fact that the venireman, though unlearned in law, felt compelled to report the incident to the District Attorney within a few minutes after defendant's visit was concluded. Any wilful attempt, of whatever nature, intended to influence jurors improperly in the impartial discharge of their duties, whether by conversations or discussions, is contemptuous and it is wholly unnecessary that such attempt to influence the jurors should have succeeded. Here they did.
For these reasons, it will be the finding of the Court that the defendant, J.D. Kitchens, on April 14th, 1973, at the home of the venireman, R.C. Nowell, committed an act which the Court finds to be contemptuous, and it will be the sentence of the Court that the defendant be sentenced to serve a term of six months in the County Jail.
Affirmed.
RODGERS, P.J., and ROBERTSON, SUGG and BROOM, JJ., concur.