855 So.2d 1004 (2003)
Michael E. RILEY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01380-COA.
Court of Appeals of Mississippi.
April 8, 2003.
Rehearing Denied July 15, 2003.
Certiorari Denied October 2, 2003.
*1006 Darryl A. Hurt, Lucedale, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
EN BANC.
IRVING, J., for the court.
¶ 1. Michael E. Riley appeals from a judgment entered in the Circuit Court of George County pursuant to a manslaughter conviction rendered by a jury of that county. In his appeal, Riley assigns five issues for appellate review. We quote them verbatim:
1. THE COURT ERRED IN NOT PROPERLY ADVISING THE JURY AS TO WHERE THE LINE WAS BETWEEN GROSS NEGLIGENCE AND CULPABLE NEGLIGENCE.
2. THE PHYSICAL EVIDENCE DOES NOT SUPPORT A FINDING BY THE JURY THAT THE DEFENDANT FIRED THE SHOT THAT KILLED FREDERICK DORTCH.
3. THE COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO DISMISS THE CASE FOR FAILURE TO GRANT THE DEFENDANT A SPEEDY TRIAL, WHICH MOTION WAS HEARD IN THE ABSENCE OF DEFENSE COUNSEL.
4. THE COURT ERRED IN DENYING THE DEFENDANT THE RIGHT TO A SPEEDY TRIAL.
5. THE VERDICT OF THE JURY, FINDING THE DEFENDANT GUILTY, WAS AGAINST THE OVERWHELMING WEIGHT OF THE CREDITABLE EVIDENCE AND CONTRARY TO THE LAW OF THE STATE OF MISSISSIPPI. THERE WAS SIMPLY NOT SUFFICIENT EVIDENCE TO FIND THE DEFENDANT GUILTY OF CULPABLE NEGLIGENCE.
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. On December 30, 1997, Michael E. Riley, with a gun at his side, approached Roy Griffin, Jr., and three passengers, Stokes Jackson, Anthony Griffin, and Frederick Dortch, while Griffin and his passengers were sitting in Griffin's car. Upon reaching the car, Riley opened the door of the driver's side of Griffin's car, grabbed Griffin with his left hand, and aimed a loaded, cocked gun at Griffin's head. Griffin remained seated in his car with the loaded gun pointed at his head. While Riley and Griffin argued, the passengers got out of Griffin's car and Dortch attempted to defuse the situation between Griffin and Riley.[1] Dortch approached Riley from behind twice and attempted to pull Riley away by grabbing Riley's arm. During the second attempt, Riley slung Dortch away, and a shot was fired. Riley heard a "pow" sound but never looked around to investigate further. Dortch lay on the ground with a gunshot wound to his *1007 head. Riley was unaware of Dortch's injury until someone in the crowd told him. Griffin and others loaded Dortch's body into Griffin's car and drove Dortch to the local hospital. Dortch was later pronounced dead due to the gunshot wound to his head. Riley was arrested and he later revealed to police the hiding place of the gun.[2]
¶ 4. Riley was indicted on February 11, 1998, for Dortch's murder. He was arraigned on April 2, 1998. The first jury trial was conducted on October 19, 1998, and resulted in a mistrial as the jury was unable to agree upon a verdict. The trial court granted a mistrial and entered a continuance at the request of the State, setting the second trial for February 1, 1999. Subsequently, a number of continuances were granted at the behest of both sides, as well as at the behest of the trial court acting sua sponte. The second trial was eventually held on January 17, 2001.

ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 5. Riley raises five issues; however he only discusses and cites authority regarding two issues: (1) his right to a speedy retrial and (2) weight and sufficiency of the evidence. Therefore, this Court will discuss only these two issues. The remaining issues Riley discussed without supporting authority will not be addressed by this Court as they are procedurally barred. Rush v. State, 749 So.2d 1024, 1026(¶ 7) (Miss.1999) (citing Gray v. State, 728 So.2d 36, 71-72 (¶ 180) (Miss.1998)). The appellant has a duty to show by plausible argument with supporting authorities how the lower court erred. Stidham v. State, 750 So.2d 1238, 1243 (¶ 22) (Miss. 1999). Where an assignment of error is not discussed in the briefs, it is considered abandoned and waived. Magee v. State, 542 So.2d 228, 234 (Miss.1989).

1. Right to Speedy Retrial
¶ 6. Allegations of speedy trial violations are examined and determined on a case-by-case basis due to the factual specifics of each action. Brengettcy v. State, 794 So.2d 987, 991(¶ 7) (Miss.2001). A defendant's right to a speedy trial is secured by the Sixth and Fourteenth Amendments to the United States Constitution and by Article 3, Section 26 of the Mississippi Constitution of 1890. Giles v. State, 650 So.2d 846, 850 (Miss.1995). The Mississippi Code also provides a statutory right to a speedy trial. "Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are present to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss.Code Ann. § 99-17-1 (Rev.2000). The statutory right, referred to most often as the 270 day rule attaches at arraignment not arrest and is satisfied when the defendant has been brought to trial. Handley v. State, 574 So.2d 671, 674 (Miss.1990). When a trial results in a mistrial or hung jury, the time of retrial remains within the discretion of the trial court, although a substantial delay may still violate the constitutional right to a speedy trial. Id. Mississippi case law establishes that the 270 day rule does not apply to retrials. Mitchell v. State, 572 So.2d 865, 870 (Miss.1990) (citing Kinzey v. State, 498 So.2d 814, 816 (Miss.1986)).
*1008 ¶ 7. Because this case involves two trials, an analysis of Riley's speedy retrial claim would normally require the calculation of three time periods: (1) the time between the arrest and the first trial for constitutional purposes; (2) the time between arraignment and the first trial for 270 day statutory rule purposes; and (3) the time between mistrial and retrial for constitutional purposes. Brengettcy, 794 So.2d at 992(¶ 8). However, Riley only cites as error the length of time between the date of the order of the mistrial and the date of the second trial. Therefore, this is the only time period which we review.
¶ 8. A chronology of the relevant dates in the case are as follows:

Oct. 19, 1998 First trial
Oct. 20, 1998 Mistrial ordered
Nov. 17, 1998 Order of continuancerequested by the State because first trial resulted
 in mistrial as the jury was unable to reach a verdict. Continued to
 Feb. 1, 1999
Jan. 26, 2000 Motion to dismiss filedRiley asserts that: (1) he had his retrial set for
 Feb. 1, 1999, (2) he will be unable to locate all of his witnesses, (3) he
 has been deprived of his rights guaranteed in the U.S. Constitution and
 the Mississippi Constitution
 Order of continuance by the court as a result of its review of the motion
 to dismiss. Case continued to Mar. 23, 2000.
Feb. 2, 2000 Order denying motion to dismiss
Mar. 20, 2000 Order of continuancerequested by Riley because he needed a copy of
 the transcript before he would be ready for trial. Case continued to
 July 3, 2000, for status and July 31, 2000, for trial.
July 31, 2000 Order continuing trialrequested by the State to have a necessary
 witness present that was out of the country. Case continued to Aug.
 1, 2000.
Oct. 23, 2000 Order of continuanceprosecutors for the State, and the trial court
 attending a CLE Seminar. Case continued to Jan. 16, 2001.
Jan. 16, 2001 Order of continuancethe State could not get a needed witness to trial.
 Case continued to Jan. 17, 2001.
Jan. 17, 2001 Second trial

¶ 9. In speedy trial analyses, a four-part balancing test articulated by the U.S. Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is applied to determine if the right to speedy trial has been denied. Smith v. State, 550 So.2d 406, 408 (Miss.1989). The four Barker factors to be considered are: (1) length of delay, (2) reason for delay, (3) the defendant's assertion of his right to speedy trial, and (4) the prejudice to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. 2182. No one of the factors is in itself dispositive, rather a totality of the circumstance is used. Jefferson v. State, 818 So.2d 1099, 1106 (¶ 11) (Miss.2002). "Nor is the balancing process restricted to the Barker factors to the exclusion of any *1009 other relevant circumstances." McGhee v. State, 657 So.2d 799, 802 (Miss.1995).

The length of the delay
¶ 10. The first Barker factor is the length of delay. Mississippi case law establishes that a delay of eight months is presumptively prejudicial. Taylor v. State, 672 So.2d 1246, 1258 (Miss.1996). Riley was first brought to trial on October 18, 1998, mistrial was ordered on October 20, 1998, and a second trial was not commenced until January 17, 2001. The delay between the mistrial and the second trial is 818 days. This delay is presumptively prejudicial and requires an analysis of the remaining Barker factors with regard to Riley's retrial.

The reason for the delay
¶ 11. The second Barker factor requires determination of the reason for the delay and the party to whom it is attributable. Delays that are attributable to one party count against that party. Brengettcy, 794 So.2d at 993 (¶ 13). The risk of "non-persuasion rests with the prosecution," and where the record is silent as to the cause of delay, this factor must weigh in favor of the defendant. Id. Any delays in the prosecution attributable to a defendant tolls the running of time. Handley, 574 So.2d at 674. Moreover, those continuances granted to the defendant not only toll the time but should be deducted from the total number of days. Flores v. State, 574 So.2d 1314, 1318 (Miss. 1990). Any continuances for "good cause" will toll the running of time, and those dates are not counted against the State. Id.
¶ 12. Riley's first trial began on October 19, 1998, and a mistrial was ordered on October 20 when the jury was unable to reach a verdict. The trial judge ordered a continuance on November 17, 1998, at the request of the State. The second trial was then continued until February 17, 1999. A total of 108 days elapsed between the date of the mistrial and the date of the first setting for the retrial. The order entered in November 1998 continuing the case until February 17, 1999, was made at the behest of the State. The order simply says that a mistrial had occurred on October 19, 1998, and a new trial was needed.
¶ 13. As previously noted, on January 26, 2000, Riley filed a motion to dismiss. In his motion, he argued (1) that the date that was set for his retrial was February 1, 1999, (2) that he would be unable to locate all his witnesses and, (3) that he was deprived of his rights guaranteed by the U.S. Constitution and the Mississippi Constitution. On the same day, the court took the motion to dismiss under advisement and issued an order continuing the case until March 23, 2000.
¶ 14. On February 2, 2000, the trial court entered an order denying Riley's motion to dismiss, finding that the 270 day rule between arraignment and trial was satisfied with the first trial and that the 270 days do not begin anew with the retrial. Moreover, the trial court commented that the court terms in George County are for one week and that there are four court terms per year. It further explained that upon its own investigation into the delay, it found that the January 1999 term was extended "in an effort to dispose of cases, and three other felony cases were tried." Also during the first through third weeks of February 1999, the trial court was involved in multi-count felony trials with one having a change of venue to Hancock County. The April 1999 term for George County was shortened to one day due to the spring conference for both the trial judges and prosecutors. The trial court remarked that the record was silent as to what occurred in Riley's case during the July 1999 term. However during the October *1010 1999 term, the trial court was again in a felony trial. Based on these findings, the trial court was of the opinion that good cause existed for the delays in the retrial of Riley's case. Furthermore, the trial court indicated that it heard no evidence of oppressive or prejudicial conduct against Riley by the State. Therefore, it did not weigh this Barker factor against the State, ultimately concluding that Riley had not been denied his constitutional right to a speedy trial.
¶ 15. "A finding of good cause is a finding of fact, and should be treated on appeal as any other finding of fact; it will be left undisturbed where there is in the record substantial, credible evidence from which it could have been made." Walton v. State, 678 So.2d 645, 648 (Miss.1996) (citing McNeal v. State, 617 So.2d 999, 1007 (Miss.1993)). We see no reason to disturb this finding by the trial judge.
¶ 16. On March 20, 2000, Riley filed a motion for a copy of the trial transcript of his first trial and requested that the case be continued. The trial court entered an order on the same day continuing the case, for good cause, until July 6 for status and July 31 for trial. A total of 131 days is involved in this delay, and these days must be charged against Riley. On July 31, 2000, the trial judge entered an order continuing the case, for good cause, from July 31 to the October term of court. A total of 82 days is involved in this delay. Even though the court did not set forth the facts constituting the "good cause," we decline to charge this delay against the State. On October 23, 2000, an order was entered continuing the case until January 16, 2001. The reason for this continuance was that both the trial judge and prosecutors were attending a professional seminar from October 25-27, 2000. On January 16, a one-day order of continuance was granted to allow the State time to get a needed witness. The second trial finally began on January 17.

The assertion of defendant's right to speedy trial
¶ 17. The third Barker factor to be considered is whether Riley asserted his right to a speedy trial before the retrial. Riley has no duty to bring himself to trial, yet the Mississippi Supreme Court has found that the defendant "gains far more points under this prong of the Barker test where he has demanded a speedy trial." Brengettcy, 794 So.2d at 994 (¶ 17) (citing Jaco v. State, 574 So.2d 625, 632 (Miss.1990)). A demand for a speedy trial is distinct from a demand for dismissal due to an alleged violation of the right to a speedy trial. Brengettcy, 794 So.2d at 994(¶ 17) (citing Perry v. State, 637 So.2d 871, 875 (Miss.1994)). Nowhere within the record does Riley assert his right to a speedy trial before the retrial; therefore, this Barker factor weighs against him.

The prejudice to the defendant
¶ 18. The final prong of the Barker analysis, prejudice to the defendant, has two aspects: (1) actual prejudice to the accused in defending his case and, (2) interference with the defendant's liberty. Brengettcy, 794 So.2d at 996 (¶ 20) (citing Perry, 637 So.2d at 876). Riley has not identified any particular prejudice that he has suffered. When a defendant does not demonstrate that he has been prejudiced by the delay, then an appellate court cannot find prejudice to the defendant. Walton, 678 So.2d at 650. Since Riley has shown neither actual prejudice that he suffered in the defense of his case nor an interference with his liberty, this factor cannot weigh in his favor.
¶ 19. In conclusion, the analysis of the Barker factors does not compel the conclusion that Riley was denied a speedy trial. The trial court found good reason for the *1011 delay for the period between February 17, 1999, and January 2000, and we agree with this finding. However, there were a number of continuances occurring after January 2000 which should be charged to both the State and Riley. But more importantly, Riley never asserted his right to a speedy retrial and failed to show any actual prejudice resulting from the delay in being retried. Thus we find no merit to the assertion that he was denied his constitutional right to a speedy retrial.

2. Weight and Sufficiency of the Evidence
¶ 20. Riley contends that the court erred in granting an instruction on manslaughter, although his reasoning is not very clear. He argues that the evidence presented at trial was "insufficient due to the total lack of malice proved in the trial." He then argues that malice is the single most important element of murder. Surely, he does not mean to assert that the manslaughter instruction should not have been given because the evidence supported only a murder charge. In any event, he continues his argument by contending that fair-minded jurors could not find him guilty of manslaughter.
¶ 21. In challenges to the sufficiency of the evidence, the standard of review requires that the evidence be considered in the light most favorable to the State. McRee v. State, 732 So.2d 246, 249(¶ 9) (Miss.1999). We must review all of the evidence in the light most consistent with the jury's verdict. Smith v. State, 802 So.2d 82, 85(¶ 10) (Miss.2001). The prosecution is given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Id. "If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required." Mangum v. State, 762 So.2d 337, 341(¶ 11) (Miss.2000).
¶ 22. Riley offered no evidence of his own at trial to rebut the State's evidence that he did not fire the shot that killed Dortch. In this appeal, Riley merely attempts to attack the credibility of the State's witnesses; in particular, he asserts that the State's case was based solely on the testimony of Griffin. Riley explains that Griffin is a person of questionable character and not a disinterested witness; thus, the jury's verdict is itself questionable. However, Riley neglects to address the plethora of other evidence offered against him. We have already detailed that evidence in the earlier portion of this opinion and will not repeat it here. It is sufficient to say the jury heard it all and resolved the issue against Riley. On this evidence, the jury was well within its right. Matters regarding weight and credibility to be accorded evidence are to be resolved by the jury. McRee, 732 So.2d at 249(¶ 9).
¶ 23. We find no merit in the issues presented by Riley.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF GEORGE COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GEORGE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS AND CHANDLER, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.
NOTES
[1] The record states that Riley was Dortch's uncle through marriage.
[2] The record is not clear on the exact date that Riley was arrested. Sheriff George Miller testified at the second trial that he arrested Riley on the night that Dortch was shot. However, the State references the date of arrest as being Feb. 13, 1998, but this date is not found in the record. Further, the State does not cite to any document where this date could be found.